EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN FELIPE HERNÁNDEZ GARCÍA, acusado y apelante.

*Número:* CR-73-30      *Resuelto:* 17 de septiembre de 1974

*Benigno Alicea Alicea,* abogado del apelante; *Myriam Naveira de Rodón, Procuradora General,* y *Adolfo J. Vilá, Procurador General Auxiliar,* abogados de El Pueblo.

El Juez Presidente Señor Trías Monge emitió la opinión del Tribunal.

La existencia y dimensión del deber del fiscal de descubrir prueba favorable al acusado ha sido objeto de frecuente examen por diversos tribunales y comentaristas. El problema se plantea de lleno en el caso presente.

Al acusado se le formuló acusación por tres infracciones a la Ley de Drogas de 1959, 24 L.P.R.A. sec. 974z, consistentes en la posesión, transportación y venta de marihuana. La prueba de cargo consistió del testimonio del señor Luis Graulau, agente para entonces de la División de Drogas y Narcóticos de la Policía, y del químico que identificó la droga. Graulau testificó, en resumen, que presenció la venta por el acusado a un tercero de un cigarrillo de marihuana. El agente les avisó entonces a unos compañeros de ronda que le aguardaban en otra calle, procediendo entre todos a arrestar al apelante, a quien le ocuparon treinta y dos cigarrillos de marihuana. El jurado rindió veredicto de culpabilidad y se le condenó a cumplir sentencias concurrentes de seis a nueve años de presidio.

La vista del caso ocurrió el 10 de mayo de 1972. Catorce días más tarde, antes de pronunciarse sentencia, la defensa radicó una moción de nuevo juicio en que alegó básicamente que, sin conocer los hechos aducidos, para el día del juicio se realizaba una investigación sobre conducta impropia y deshonesta de Graulau, Pablo N. Padilla, Ulises Martínez y un cuarto agente desconocido por la defensa; que como resultado de dicha investigación se radicaron cargos por hurto mayor contra Padilla y por recibo de bienes robados contra los demás agentes, incluyendo a Graulau; que a Graulau se le exigió su renuncia de la División de Drogas y Narcóticos y que no se le procesó por acceder a declarar sobre los hechos investigados como testigo de cargo.

Como parte de su moción la defensa solicitó copia de las declaraciones juradas alegadamente prestadas por Graulau

en la mencionada investigación. En la vista de la moción la defensa desistió de su solicitud de que se le entregasen las referidas declaraciones. El tribunal denegó finalmente la moción y procedió días más tarde a dictar sentencia.

Procede luego el acusado a solicitar fianza en apelación en la que alega, para sustanciar el recurso, fuera de repetir alegaciones de su moción de nuevo juicio, que innumerables acusaciones por infracción a la Ley de Drogas se archivaron por el ministerio público por razón del resultado de la investigación contra Graulau y sus compañeros. Se acompañó prueba al efecto y, en la vista de la moción, la defensa insertó en autos una declaración de Graulau, jurada tres días antes del juicio en la causa del epígrafe, en que el testigo afirmaba que, a instancias de Padilla, allanaron una morada, se apoderaron para su propio uso de una suma de dinero perteneciente a un vendedor de drogas y luego acordaron cometer perjurio si surgía alguna querella sobre el allanamiento.

En *Mooney* v. *Holohan*, 294 U.S. 103, *reh. den.* 294 U.S. 732 (1935) y en *Pyle* v. *Kansas*, 317 U.S. 213 (1942) [1] se condenó el uso consciente de testimonio perjuro por el fiscal. Desde estos casos, sin embargo, el análisis de este género de problemas ha experimentado extraordinaria evolución. En *Napue* v. *Illinois*, 360 U.S. 264 (1964), se sienta la norma de que la obtención de un veredicto maculado por testimonio de dicha naturaleza viola el debido proceso de ley.

Más tarde, en *Brady* v. *Maryland*, 373 U.S. 83 (1963) se expande aún más la regla, resolviéndose que la supresión de evidencia solicitada por la defensa y relevante a la inocencia o castigo del acusado viola el debido proceso de ley. [2] En *Giglio* v. *United States*, 405 U.S. 150 (1972), ya se expresa con toda claridad que no es la intención del fiscal lo que

[1] Véase: *Mesarosh* v. *United States*, 352 U.S. 1 (1956).

[2] Compárese con *Pueblo* v. *Quiñones Ramos*, 99 D.P.R. 1–14 (1970), escolio 3, en que no se clasifica un problema superficialmente análogo como una cuestión de debido proceso de ley. Los hechos del caso son, sin embargo, distinguibles de los que nos ocupan.

cuenta para determinar si se ha ofendido el debido proceso de ley, sino la posibilidad de daño al acusado. *Giglio* es de especial interés para el estudio del caso presente pues la evidencia descubierta por el acusado fue que, con el desconocimiento del fiscal que desfiló la prueba de cargo, se le había ofrecido inmunidad por otro miembro del ministerio público a un cómplice del acusado que declaró contra éste.

En *Giles* v. *Maryland*, 386 U.S. 66 (1967), en opinión concurrente, el Juez Fortas expresó su opinión, no adoptada hasta ahora por una mayoría del Tribunal Supremo de los Estados Unidos, de que existe un deber afirmativo del fiscal de descubrir toda evidencia que no sea "meramente repetitiva . . . o sin importancia para la defensa" en la preparación del caso. El criterio más generalizado hasta hoy en la jurisprudencia es que la evidencia suprimida debe ser relevante a la inocencia del acusado o a la sanción que se le imponga. Comments, *Materiality and Defense Requests: Aids in Defining the Prosecutor's Duty of Disclosure*, 59 Iowa L. Rev. 432 (1973).

Varios tribunales se han inclinado recientemente, no obstante, hacia el criterio de la necesidad de un descubrimiento total. *United States* v. *Hibler*, 463 F.2d 455 (9th Cir. 1972); *Shuler* v. *Wainwright*, 341 F.Supp. 1061, 1072 (M.D. Fla. 1972). En Vermont, el Canadá e Inglaterra priva la regla de total acceso al sumario fiscal y diversos comentaristas favorecen al menos una expansión sustancial del ámbito de descubrimiento usualmente permitido. Bass, V.: *Brady* v. *Maryland and the Prosecutor's Duty to Disclosure*, 40 U. Chi. L. Rev. 112 (1972); Traynor, *Ground Lost and Found in Criminal Discovery*, 39 N.Y.U. L. Rev. 228 (1964).

■ Debe señalarse también que la necesidad de que la defensa solicite la evidencia en cuestión no se estima ya siempre, como en tiempos de *Brady*, un requisito cuya omisión libera indefectiblemente al fiscal de poner a la disposición del

acusado prueba relevante a su defensa. *Davis* v. *Heyd*, 479 F.2d 446 (5th Cir. 1973).

■ Los principios señalados hallan amplio apoyo en estudios prestigiosos sobre el tema. ABA *Project on Minimum Standards for Criminal Justice, Standards Relating to Discovery and Procedure before Trial* (Approved Draft, 1970), sec. 2.1d; ABA *Project on the Standards for Criminal Justice, Standards Relating to the Prosecution Function and Defense Function* (Approved Draft, 1971), sec. 3.11. En la norma 4.9, National Advisory Commission on Criminal Justice Standards and Goals, *Report on Courts*, Washington, 1973, pág. 89, se expresa que . . . "El fiscal debe . . . descubrir cualquier evidencia o información que pueda considerarse razonablemente como valiosa a la defensa, aunque tal descubrimiento no sea de otro modo requerido." Las razones que han impulsado la adopción de estas pautas constituyen precisamente la base de la decisión de este Tribunal en *Pueblo* v. *Dones*, 102 D.P.R. 118 (1974).

No es necesario en este caso, no obstante, adentrarnos en la división de criterios evidente en *Giles* y otros fallos y escritos sobre el alcance preciso del debido proceso de ley en este campo. Tampoco es imprescindible encarar muchas de las dificultades que suscita la definición de lo que constituye la prueba "relevante" a descubrirse, *United States* v. *Keogh*, 391 F.2d 138 (2d Cir. 1968), ni aun pronunciarnos sobre la necesidad o el rol de un requerimiento por la defensa. La causa presente es resolvible bajo principios claramente sentados, sin tener que pasar juicio sobre las posiciones más avanzadas o extremas sobre las fronteras del debido proceso de ley respecto al descubrimiento de prueba por el fiscal.

■ Vimos aquí que se alegó por la defensa que se le concedió inmunidad al único testigo de cargo que presenció los hechos; que se le exigió su renuncia de la División de Drogas y Narcóticos; que para la fecha del juicio dicho testigo estrella estaba bajo investigación de la Policía; que el testigo no

albergaba grandes escrúpulos respecto al delito de perjurio, según se desprende del acuerdo que celebró con sus cómplices en la investigación del caso en su contra; y que el ministerio público solicitó el archivo de un número de causas en que el agente en cuestión era testigo de cargo. La defensa solicitó explícitamente la concesión de un nuevo juicio. Ante alegaciones de tal seriedad, fiscalía no sólo adoptó una posición pasiva— repudiada por la jurisprudencia, *Ingram* v. *Peyton*, 367 F.2d 933 (4th Cir. 1966); *Levin* v. *Katzenbach*, 363 F.2d 287 (D.C. Cir. 1966)—sino que resistió activamente el descubrimiento de la prueba. Su negativa a revelar en tales circunstancias evidencia que era claramente relevante para determinar la inocencia del acusado, así como la sentencia a imponérsele, violó el debido proceso de ley.

En vista de la anterior conclusión, huelga que nos pronunciemos sobre la importancia o validez de la renuncia inicial por la defensa a las declaraciones prestadas por Graulau en el curso de la investigación que se realizaba sobre su conducta. Se habrá advertido que dichas declaraciones vinieron de todos modos a formar parte del récord más tarde y que, además, la renuncia no afectaba las alegaciones restantes de la moción para la celebración de un nuevo juicio.

Por los motivos consignados y dentro de las circunstancias del presente caso, *se ordenará la celebración de nuevo juicio en que se ponga a disposición de la defensa información relevante a la inocencia del acusado o al castigo que en su día pueda imponérsele.*

El Juez Asociado Señor Carlos J. Irizarry Yunqué, está conforme con la opinión emitida, pero en adición adoptaría como regla en esta jurisdicción la posición expresada por el Juez Fortas en *Giles* v. *Maryland*, 386 U.S. 66 (1967). El Juez Presidente, Señor José Trías Monge, concurre con este criterio del Juez Asociado Señor Irizarry Yunqué.